IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CV-29-FL

| | | |
|---|---|---|
| SABRINA GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH CAROLINA OFFICE OF | ) | ORDER |
| EMERGENCY MEDICAL SERVICES, | ) | |
| UNITED STATES OF AMERICA, and | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon separate motions to dismiss the complaint under Rules 12(b)(1), 12(b)(5), and 12(b)(6) by defendants North Carolina Office of Emergency Medical Services ("OEMS") and United States of America (DE 8, 5), plaintiff's motion to stay (DE 12), and defendant OEMS's motion to stay discovery (DE 15). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, defendants' motions to dismiss are granted, plaintiff's motion to stay is denied, and defendant OEMS's motion to stay discovery is terminated as moot.

**STATEMENT OF THE CASE**

Plaintiff commenced this tort action in Cumberland County District Court November 9, 2023, asserting claims under North Carolina law for stalking, infliction of emotional distress, and civil harassment. Plaintiff requests declaratory judgment, compensatory damages, a restraining order prohibiting any contact between defendants and plaintiff, a permanent injunction restraining defendants from any other acts of stalking, and punitive damages. (See generally Compl. (DE 1-

1)). Following removal to this court January 17, 2024, defendants United States of America and OEMS (together, the "government defendants") filed the instant motions to dismiss January 24, 2024, with the United States of America relying upon a declaration of James Green ("Green"), an employee of the United States Army Claims Service. Plaintiff moved to stay all proceedings February 7, 2024. Defendant OEMS moved to stay discovery February 20, 2024.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows. Plaintiff resides in Hampton, Virginia. (Compl. ¶ 3). Defendant OEMS is a North Carolina state agency whose mission is to promote effective emergency medical care for the residents of North Carolina. (See id. ¶ 5). Plaintiff's complaint contains allegations against Gregory Ford, a federal employee for whom the United States was substituted as a defendant. The complaint also names "John Does 1-10" as defendants.

Plaintiff lived at an apartment complex in Winston-Salem until November 1, 2018. (Id. ¶ 12). Plaintiff retained counsel to file a sexual harassment complaint against her apartment complex's maintenance man, who "was engaging in nefarious activities[.]" (Id. ¶¶ 14–15). After plaintiff submitted this complaint, she began experiencing unspecified acts of "harassment and intimidation" from her leasing office and the maintenance man. (Id. ¶¶ 16–17). At an unspecified point in 2020, plaintiff moved to Hampton, Virginia after being "forced to flee North Carolina as a result of [d]efendants' cooperation and conspiracy to harass and intimidate her." (Id. ¶ 20).[1]

Plaintiff alleges that "defendants' actions . . . [were] part of a larger conspiracy against plaintiff, put forth by unnamed parties in this lawsuit[,]" the John Doe defendants. (Id. ¶ 22). Defendants have allegedly obtained plaintiff's credit, employment, driver license, personal background information, and medical history without authorization, and have shared it with

---

[1] Plaintiff simultaneously alleges that she moved to Hampton from Alexandria, Virginia. (Compl. ¶ 21). This inconsistency does not affect any arguments raised in the instant motions.

2

unnamed third parties. (Id. ¶¶ 24–25). Defendants have also allegedly "taken part in a continuous campaign of slandering and harassing plaintiff with their threats of all their footage from an Amazon Box, toy trucks that were taken apart, recordings of plaintiff and her cellular phone calls and camera footage from 2016 to 2021," which has continued to the present in conjunction with "officials in Virginia." (Id. ¶ 26). Emergency Medical Services ("EMS") and fire rescue personnel harassed plaintiff in an unspecified way. (Id. ¶ 28).

On November 15, 2022, plaintiff sent the chief of OEMS a cease and desist letter advising him of harassment, but has received no response. (Compl. ¶¶ 29–30). Unspecified "[i]ncidents of harassment, threats, and surveilling occurred at multiple hotels in Virginia, townhouse and apartment complexes in Virginia, and hotels and apartments in North Carolina, including in or near Cumberland County." (Id. ¶ 31). The North Carolina State Capitol Police and the State Bureau of Investigation allegedly operated surveillance upon plaintiff, following her between Raleigh, Fayetteville, "Wake Med," and Garner, North Carolina. (Id. ¶ 33).

Plaintiff was charged with "possession charges" in Virginia and Georgia without any information on issuing officer, date, time, city, or state. (Id. ¶ 34). "Plaintiff's driver license also had other unknown items which did not belong to her." (Id. ¶ 35). Finally, military special investigations allegedly conducted an investigation on plaintiff, even though plaintiff has never been a member of the armed forces. (Id. ¶¶ 36–37). Plaintiff sent a letter to Fort Liberty advising of harassment and intimidation but has received no response. (Id. ¶ 38). "Defendants . . . have been using scanner devices to repeatedly play 'thud knocking sounds' into plaintiff's current residence" solely for the purposes of harassment and intimidation. (Id. ¶ 39). The alleged harassment and intimidation have forced plaintiff to pay early-out fees to three separate apartment complexes, in Richmond and Fredericksburg, Virginia. (Id. ¶ 40). Defendants took up residence

3

at each location for the duration of time plaintiff resided at each location. (Id. ¶ 41). Defendants have "thrown rocks at the back of [plaintiff's] townhouse on several occasions," have "broke[n] into plaintiff's vehicle and left a knife and a long screwdriver" therein, and "have followed plaintiff[.]" (Id. ¶¶ 48–50).

## COURT'S DISCUSSION

A.  Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).[2] Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

A motion under Rule 12(b)(5) challenges the sufficiency of service of process. See Fed. R. Civ. P. 12(b)(5). "When the process gives the defendant actual notice of the pendency of the action, the rules . . . are entitled to a liberal construction" and "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). Nevertheless, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Id. The plaintiff bears the burden of establishing that process properly has been served.

---

[2]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

4

Dalenko v. Stephens, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013); see also Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993) (holding the plaintiff must prove service of process if challenged).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B. Analysis

1. Federal Government's Motion to Dismiss

The United States moves to dismiss on grounds that the court lacks subject matter jurisdiction under the Federal Tort Claims Act ("FTCA") because plaintiff has not exhausted her administrative remedies, for failure to state a claim under Rule 12(b)(6), and for insufficient service of process. (US Br. (DE 6) 1). The court agrees with the jurisdictional argument, and so does not reach the other points.

The United States enjoys sovereign immunity, which shields it from suit absent waiver or consent. FDIC v. Meyer, 510 U.S. 471, 475 (1994). Sovereign immunity is jurisdictional, id., and any waiver of sovereign immunity must be strictly construed in the sovereign's favor. Lane v. Pena, 518 U.S. 187, 192 (1996).

5

The FTCA effects a limited waiver of the federal government's sovereign immunity, but only for such claims and on such terms as the FTCA specifies. See Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995). One such term is the FTCA's administrative exhaustion requirement, which is therefore "jurisdictional and may not be waived." Ahmed v. United States, 30 F.3d 514, 517 (4th Cir. 1994). The federal government presents evidence that plaintiff has not perfected her administrative remedies, to which plaintiff offers no response. (See US Br. Ex. 1 (DE 6-1)); Pl's Br. (DE 11) 2–3).[3] Plaintiff has therefore failed to comply with the limited waiver of sovereign immunity expressed by the FTCA, and her claims against the United States must be dismissed for lack of subject matter jurisdiction.

2. OEMS's Motion to Dismiss

OEMS raises similar arguments to the United States. The court again agrees that dismissal on sovereign immunity grounds is required, and so does not reach other issues raised.

The state of North Carolina, and its agencies such as OEMS, are entitled to sovereign immunity under the Eleventh Amendment absent waiver or consent. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). OEMS is indeed such an agency: it is a subdivision of a statutorily-established cabinet-level agency of the state of North Carolina. See N.C. Gen. Stat. §§ 143B-6, -136.1. Plaintiff again makes no argument against OEMS's general entitlement to Eleventh Amendment immunity, and so the court concludes that such immunity is warranted. See Metcalf & Eddy, Inc., 506 U.S. at 144. Plaintiff instead addresses only sovereign immunity under state doctrine. These concepts are "related but not identical," see Stewart v. North Carolina, 393 F.3d 484, 487–88 (4th Cir. 2005), but even assuming that sovereign and Eleventh Immunity were precisely coterminous here, plaintiff's claims fail.

---

[3] The court may consider this evidence to resolve a Rule 12(b)(1) motion. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

North Carolina's State Tort Claims Act ("STCA") partially waives sovereign immunity, but only for negligent acts, not intentional torts. See N.C. Gen. Stat. § 143-291; Cedarbrook Residential Ctr., Inc. v. N.C. Dep't of Health & Human Servs., 383 N.C. 31, 45–47 (2022); Jenkins v. N.C. Dep't of Motor Vehicles, 244 N.C. 560, 564–65 (1956).

Each of plaintiff's claims here carries an intentional mens rea.[4] See N.C. Gen. Stat. § 14-277.3A (stalking and harassment); Dickens v. Puryear, 302 N.C. 437, 452 (1981) (intentional infliction of emotional distress). Thus, none is within North Carolina's limited waiver of sovereign immunity, and all claims against OEMS must be dismissed.

Plaintiff makes three counterarguments. None avails her.

First, plaintiff cites Boyd v. Robeson County, 169 N.C. App. 460, 477–78 (2005) to argue that state employees may be held liable for negligent acts. (Pl's Br. 2). The quotation plaintiff provides does not actually appear in Boyd, which dealt with distinctions between individual and official capacity suits. See generally Boyd, 169 N.C. App. 460. But in any case her point does not affect the analysis above; the STCA waives sovereign immunity in limited fashion, only for negligent torts. See N.C. Gen. Stat. § 143-291. Plaintiff presents claims for intentional torts which accordingly do not fall within that waiver.

Second, plaintiff's citation to Chastain v. Arndt, 253 N.C. App. 8, 15 (2017) addresses individual capacity claims against state officials, which are not barred by sovereign immunity, rather than claims against a state or a state agency, as here, which are. See id.; (Pl's Br. 3). Moreover, the applicable portion of Arndt supports OEMS's position here: it held that official capacity negligent tort claims, which involve sovereign immunity, indeed must be presented to the North Carolina Industrial Commission to comply with the STCA. See id. at 10, 14.

---

[4] Two of plaintiff's claims arise under criminal statutes. The court does not address whether these statutes provide private rights of action because OEMS does not raise that argument.

Third, plaintiff advances a policy argument against sovereign immunity. (See Pl's Br. 2). The court disregards this objection as lacking a basis in operative law.

Finally, the court provides additional clarification of its ruling in light of the Fourth Circuit's recent decision in Wideman v. Innovative Fibers LLC, 100 F.4th 490, 495–98 (4th Cir. 2024). The court dismisses plaintiff's claims against OEMS not because North Carolina state law sets the exclusive venue for her claims elsewhere, or because of other substantive state-law limitations on her claims. Instead, these claims fail because they do not fit within any North Carolina waiver of Eleventh Amendment or sovereign immunity.

3. Plaintiff's Motion to Stay

Plaintiff moves to stay this case while she exhausts her administrative remedies under the FTCA. The court declines to do so.

As an initial matter, the court has dismissed the government defendants, but retains jurisdiction over the case because the John Doe defendants are not encompassed within government defendants' motions to dismiss, and so remain in the case, subject to the service of process limitations set forth below. The court therefore rejects government defendants' arguments that the motion must be denied for lack of subject matter jurisdiction. (See US Opp'n Stay (DE 18) 2). Instead, the court declines to stay the case because plaintiff exhausting her administrative remedies after filing suit cannot cure the jurisdictional defect identified above. See McNeil v. United States, 508 U.S. 106, 107–113 (1993); Messino v. McBride, 174 F. Supp. 2d 397, 399 (D. Md. 2001) ("[c]ompletion of administrative proceedings after filing does not cure the defect").

Plaintiff's motion to stay is denied.

4. Defendant OEMS's Motion to Stay

Finally, OEMS moves to stay discovery pending decision on its motion to dismiss. Because defendant OEMS's motion to dismiss is granted, the court terminates this motion as moot.

5. Failure to Serve John Doe Defendants

"If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4. Plaintiff commenced this action in November 2023, and the case was removed to this court January 17, 2024, but plaintiff has not demonstrated service on any John Doe Defendants within 90 days after the complaint was filed. Therefore, plaintiff must show cause why the action should not be dismissed as to the John Doe Defendants for failure to effectuate service.

**CONCLUSION**

Based on the forgoing:

1. The motion to dismiss by the United States of America (DE 5) is GRANTED, and plaintiff's claims against this defendant are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction;

2. Defendant OEMS's motion to dismiss (DE 8) is GRANTED, and plaintiff's claims against this defendant are DISMISSED WITHOUT PREJUDICE under the Eleventh Amendment;

3. Plaintiff's motion to stay is DENIED;

4. Defendant OEMS's motion to stay discovery is TERMINATED AS MOOT;

5. Plaintiff is DIRECTED to show cause, within 21 days of the date of this order, why the action should not be dismissed as to the John Doe Defendants for failure to effectuate

9

service. Plaintiff is warned that failure to demonstrate good cause for the failure to serve the John Doe Defendants will result in dismissal of the action against them pursuant to Federal Rule of Civil Procedure 4(m); and

6. In the event plaintiff fails timely to respond to this order, the clerk is DIRECTED to close this case on the basis of this order, without further order of the court.

SO ORDERED, this the 14th day of June, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge